{¶ 24} I respectfully dissent because I do not find the evidence upon which the hearing officer based her decision to be credible.
 {¶ 25} Three witnesses testified in this hearing. The claimant testified that, after learning he had broken a tool, his supervisor, Mr. Jay, told him to go home on the morning of June 27, 2002. That afternoon, claimant said, he called the plant and asked for Gregg, Mr. Jay's supervisor, but Gregg was not there. Ora, the production supervisor, answered, but she did not "know what's going on." This part of the testimony explaining claimant's first attempt to obtain information about his job was not refuted.
 {¶ 26} The next morning, June 28th, claimant went to work before 8 AM. Claimant testified that he put his time card in the time clock. On his way to the tool room, Ora stopped him and said that Jay did not want him in the tool room. Jay was not there yet. When Craig, the computer clerk, asked him what he was going to do, claimant answered that he would wait for Jay. When Jay arrived, claimant was told that Jay did not want to talk to him. Craig then told claimant to turn in his time card and uniform to get a paycheck for the prior week. Before he left, he "put in the time clock for out," he said, and then turned in his time card and uniform. He then took his paycheck and gave the office his phone number so that they could call when they had more work.
 {¶ 27} One week later, he returned for his final paycheck.
 {¶ 28} Mr. Jay never testified. The general manager, Angie Helcbergier, however, signed a report providing separation information that contradicts her testimony. In that report, dated November 16, 2001, is included the following statement from the company:
 {¶ 29} Claimant did not report to work on 6/28/01 and did not notify management about reason or absence. When he came in to pick up his paycheck, he notified management that he wishes to terminate his employment and look for a better position.
 {¶ 30} In a separate Request for Information dated November 26, 2001, Helcbergier again wrote that "claimant did not report to work on 6/28/01." She repeated this statement a second time in the same report. The company's witness, David Marion, however, corroborates claimant's statement that he returned on June 28th and contradicts Helcbergier's report. This contradiction puts her credibility at issue. Moreover, in its brief, the state admits that claimant reported to work on June 28th
— a point that clearly contradicts the company's report AngieHelcbergier sent to the Ohio Department of Job and Family Services.
 {¶ 31} Next, this witness said "I didn't see him bring it [his uniform] in, I was in the office, it was early in the morning. And I know that from the guys * * * from his co-workers." Tr. 16. However, later she says she wasn't there that week. Tr. 25. Another contradiction.
 {¶ 32} In that report, Angie Helcbergier also said claimant gave management no reason for his absence or his failure to report on June 28th. That statement, of course, must be set aside, because he would not have to give a reason for an absence if he were not absent. I must conclude that credible evidence does not support the company's stated position in its written response to the State that he did not report for work the next day.
 {¶ 33} This failure of credibility taints the rest of the evidence. It was argued that claimant's turning in his uniform is evidence that he was quitting. Claimant testified, however, that he was told by Craig to turn in his uniform and time card to receive his paycheck. The company did not call Craig as a witness to refute this testimony. If, in fact, the company had no intention of calling claimant back, then his statement that he was told to turn in his uniform is quite consistent with his claim that he was laid off.
 {¶ 34} Also disputed is whether claimant clocked in or out of work. Claimant said he did; Angie Helcbergier said he did not. This disputed fact could have been easily resolved if the company had provided the time card. In fact, the Hearing Officer expressly asked the company to provide it and the company said it would. That time card, however, is not in the record. The failure to provide requested material evidence, along with discrepancies in the company's testimony, affects the rest of the testimony.
 {¶ 35} Another issue is what claimant said to his co-workers. Claimant said he saw Marion on June 28th, but did not talk to him. Angie Helcbergier testified that claimant told David Marion and Robert Checkic, co-workers, that he was quitting. The company did not bring Robert Checkic to testify. David Marion did testify; however, he also lacked credibility.
 {¶ 36} Marion testified that claimant said he was quitting. On the other hand, the record contains a document which contradicts this statement:[5]
 {¶ 37} January 7, 2002 Statement.
 {¶ 38} On June 27th 2001 Mike Jelic was told by the boss Mr. J to go home. Next day Mike Jelic came to work and was told go home. Mr. Jelic then understood and want (sic) home.
 {¶ 39} Witness
 {¶ 40} David a (sic) Marion
 {¶ 41} (216-961-8265)
 {¶ 42} There is a second document:
 {¶ 43} January 7, 2002
 {¶ 44} Statement
 {¶ 45} Mr. Mike Jelic may use my name.
 {¶ 46} David a (sic) Marion
 {¶ 47} (216-961-8265)
 {¶ 48} Claimant cannot be said to have quit if he was told to go home. Witness Marion was asked about this written statement. He claims that he "only signed it once," but the signatures are quite similar. He also denied at hearing the second sentence, that is, that claimant was told to go home the second day. The witness explained that he had not "even really read it." He explained that he had a "hard time reading" and his uncle read it. He also claimed that his uncle did not read all three sentences, just the first. He also claimed there was another "one" that his uncle read to him that he could not sign because it was not the truth. Marion was then asked to read the three-sentence paragraph. The transcript recounts an accurate reading of the paragraph. Claimant's attorney then stated, without objection: "Okay. You read it just fine." Upon questioning by the Hearing Officer, the witness explained that he graduated from high school, but was in a slow learners class. Marion's ability to read the document accurately at the hearing belies his explanation that he had a hard time reading it. Such a difference between his signed statement and his testimony, along with such a weak explanation, cannot be considered credible evidence in order to support the Review Commission's decision that claimant quit his employment, much less quit it without just cause.
 {¶ 49} The Review Commission, moreover, in its decision mailed February 28, 2002 relied upon a fundamental mistake of fact: that is, that the employer consistently maintained that the claimant arrived prior to the start of his shift on June 28th. On the contrary, there is documentary evidence proving that the employer initially maintained that claimant did not report to work on that date and subsequently changed this position. Because of this mistake, along with contradictions in the company's evidence, I must conclude that the decision of the Commission is against the weight of the credible evidence.
[5] Between "told" and "go home" are four words that were crossed out at Marion's request, according to Jelic. Marion could not remember what words were crossed out. Jelic testified that Marion objected to the words "I am laid off," so they were crossed off and "go home" was added with Marion's permission. Jelic said Marion signed the document after that change was made. Both documents are handwritten. Both signatures look alike and are written in script, whereas the rest of both documents are hand printed.